FILED
Scott L. Poff, Clerk
United States District Court

By tblanchard at 4:45 pm, Apr 13, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| DUANE R. DAVIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV616-027 |
| | ) | |
| NANCY A. BERRYHILL,[1] acting Commissioner of the Social Security Administration | ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Duane Davis, Jr. seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits. *See* doc. 1 (Complaint).

I.  **GOVERNING STANDARDS**

In social security cases, courts

. . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

to support a conclusion." *Id.* (quotation omitted) . . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id.*

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc.*

2

§ 404.1520(a)(4)(iv). If the claimant cannot perform [his] past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

The parties agree on the basic facts. Born in 1974, Davis completed high school, then worked as a warehouse worker, grounds caretaker, and "clean-up worker." Doc. 12 at 2; doc. 13 at 2. His application for benefits was denied in 2011, but the Appeals Counsel vacated and remanded for reconsideration. After a second hearing in 2014, the ALJ again denied Davis benefits, and the Appeals Council affirmed. Doc. 12 at 2; doc. 13 at 1. He seeks review of the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ determined that Davis' nonalcoholic cirrhosis of the liver, apha-1 antitrypsin deficiency, inguinal hernia exacerbated by obesity, and depression were severe impairments at Step Two of the sequential

---

*Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

evaluation. Tr. 15-16. He concluded that plaintiff's combination of impairments did not meet or medically equal a listed impairment. *Id.* at 16-18. The ALJ found that he retained the RFC for light work, except that he

> is limited to performing work activities that never require climbing ladders, ropes, or scaffolding. He can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour work day. He can lift/carry 20 pounds occasionally (up to 1/3 of an eight-hour workday) and 10 pounds frequently (up to 2/3 of an eight-hour workday). He should avoid concentrated exposure to extreme environmental irritants/pollutants due to his alpha-1 antitrypsin deficiency disorder.
>
> His depression limits him to performing work activities with a specific vocational preparation of 1-3. While his concentration may be intermittently disrupted for up to 1/3 of an eight-hour workday if the work is in the upper limits of semi-skilled or even skilled work; he can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday if the work he is performing is simple, repetitive, routine, or boring. Even though his persistence might be disrupted once or twice a week, he will still be able to perform assigned tasks by the end of the same workday. He should avoid all but superficial social interaction with the public although he can work in close proximity with them throughout the entire workday.

*Id.* at 18.

Davis, the ALJ determined, was unable to perform any past relevant work. Tr. 28. Given his age, education, experience, and RFC, however, he was able to perform the requirements of other jobs,

including work as a mail clerk, night guard, and parking lot cashier. *Id.* at 29. Davis, therefore, is not disabled. *Id.* at 30. Davis disagrees, arguing that the ALJ misstated the evidence supporting several of his conditions, leading to a cascade of errors in the sequential process. Doc. 12.

### A. Weight of the Medical Evidence

The ALJ found that Davis' joint and muscle pain (arthralgia and myalgia) were not medically determinable impairments because "the medical evidence of record contains no significant findings on examination or other evidence (*e.g.* imaging studies) to support these allegations." Tr. 16. Davis argues that the ALJ "improperly rejected the opinions of all three treating physicians and the statements of [plaintiff's former employer,] Mr. Sparks." Doc. 12 at 17.

#### *1. Davis' Physicians*

The ALJ discounted the opinions of Davis' treating physicians (Drs. Murray, Purvis, and Martinez), affording them little to no evidentiary weight. Tr. 21-26. Davis contends that this is reversible error. Doc. 12 at 17-18. In this Circuit,

> [a] treating physician's medical opinion "must be given substantial or considerable weight unless 'good cause' is shown to the

5

> contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (requiring the ALJ to give "good reasons" for not giving controlling weight to the treating physician's opinion). This Court has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The ALJ must "clearly articulate the reasons for giving less weight" to a treating physician's opinion. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). However, an ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

*Nichols v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2017 WL 526038 at *5 (11th Cir. Feb. 8, 2017).

Davis asserts that the ALJ gave Murray's opinion no weight "based on Mr. Davis's work after onset." Doc. 12 at 17. While the ALJ did point to the inconsistency between Murray's opinion that Davis was totally disabled by his symptoms and his demonstrated ability to work, this was merely one reason, *among others*, that he rejected that opinion. *See* Tr. 21 ("Despite alleged 7/10 daily pain, claimant's employer indicated claimant first started out working 18 hours per week in 2006, and he worked his way up to 32 hours before having his hours slowly cut back to 12 hours per week. . . . Further, in January 2010, claimant reported working 7 hours per day, 5 days per week a total of 35 hours per week.");

6

*see generally* Tr. at 21-23. Davis also takes issue with the ALJ's evaluation of Dr. Murray's treatment records, doc. 12 at 19 (objecting that ALJ relied on records from 2007 in reaching credibility determination), his interpretation of Dr. Murray's descriptions of Davis' fatigue, *id.* at 20 (objecting that ALJ found descriptions of fatigue as "debilitating" and "severe" on the same date inconsistent), and observations concerning Davis' success following his physicians' instructions, *id.* (objecting to ALJ's reliance on Davis' weight gain, despite instructions to lose weight).

Even if the Court agreed with Davis' view of the evidence, he has still not addressed in any way the other *valid* reasons given by the ALJ for discounting Dr. Murray's opinion. For example, despite opining that Davis suffered "severe . . . daily pain," Murray "did not know the precipitating factors leading to the pain or the location of the pain." Tr. at 21; *see* Tr. at 657 (interrogatories completed by Murray, response to question requesting "precipitating factors leading to the pain," was "Not known," response to question on "location of the pain" left blank). The ALJ further discounted Murray's opinion because of the infrequency of Davis' treatment with him and (due to that infrequency and the dearth

7

of objective medical evidence or clinical findings supporting his opinion) his apparent reliance on Davis' not-credible statements; explaining that "Dr. Murray appears to have relied upon claimant's statements (which the undersigned does not find to be very credible)[3] . . . [and] it appears that Dr. Murray's opinion for the years at issue from claimant's alleged onset date, October 31, 2009 through the present are based on one examination . . . which is not part of the Record." Tr. at 23.

Both consistency and the nature and extent of treatment are permissible factors for the ALJ to consider in weighing a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *see also Sryock*, 764 F.2d at 835 ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." (internal quotes and cite omitted)). Given these valid reasons for discounting

---

[3] In evaluating Davis' symptoms to determine his RFC, the ALJ concluded that Davis' underlying impairment could reasonably be expected to produce his pain and other symptoms, but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . . " Tr. 19. The ALJ then proceeded to consider Davis' reported symptoms. *Id.* at 19-20. Davis does not challenge the ALJ's determination that he was not credible. *See, generally,* doc. 12. And, ALJs may reject a treating physicians' opinion if it appears to be based on a claimant's own properly discredited subjective complaints. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989) (cited in *Richardson v. Colvin*, 2013 WL 1338730, at *5 (S.D. Ga. Mar. 11, 2013)). Since Davis concedes that point, and says nothing to contradict the ALJ's analysis of the basis of Dr. Murray's opinion, he implicitly concedes that Murray's "opinion for the years at issue" was not credible. Tr. 23.

8

Murray's opinion, and even crediting Davis' arguments entirely, the ALJ did not err in his treatment of the medical evidence.[4]

Davis fails to identify any particular reason for his disagreement with the weight assigned to Drs. Martinez and Purvis' opinions. Davis' brief conclusorily states that the ALJ's "rejection of Dr. Martinez's opinions and . . . [his] failure to assign greater weight to Dr. Purvis's opinion is [sic] just as flimsy as the ALJ's rejection of Dr. Murray's opinion" -- without providing any further explanation, context, or even citations to the record. *See* doc. 12 at 20.

As this Court has explained, a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed." *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at *3 n. 3 (S.D. Ga. Aug. 12, 2015) (citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App's 855, 856 n. 1 (11th Cir. 2013)). Plaintiff's bare reference to his arguments regarding Dr. Murray

---

[4] Even assuming that Davis is correct that every one of the ALJ's reasons for rejecting Murray's opinion he challenges was erroneous, the existence of additional, valid reasons for rejecting that opinion renders any such error harmless. *E.g., Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n. 3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision"); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decisions will stand."); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's error harmless where correcting it would not change the decision).

is not sufficient to demonstrate that the ALJ's evaluation of Drs. Purvis and Martinez's opinion evidence was insufficient. And this Court will not, on its own, hunt down any such reasons. *See, e.g. United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, Davis has waived any argument on Drs. Purvis and Martinez's credibility.

### 2. *Sparks' Testimony*

Davis next objects to the ALJ's rejection of the testimony of Mike Sparks, his prior employer. *See* doc. 12 at 3, 19. The ALJ concluded that Sparks "lacks credibility," "afford[ed] his opinion no weight[,] and [found] it to be unpersuasive." Tr. 28.

All that is required of an ALJ regarding non-medical source evidence is that the evidence be considered. *See* 20 C.F.R. §§ 416.927, 416.929. There is no requirement that an ALJ give it any particular amount of weight. *See id.* In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if he does "not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (cited in *Cole v. Comm'r of Soc. Sec.*, 2012 WL 4077233 at *4 (M.D. Fla. Sept. 17,

2012)).

The ALJ's conclusion that Sparks was not credible was based on inconsistencies in reports of plaintiff's earnings from his employment with Sparks' company. *See* Tr. 28, 287, 303, 311. Although the Court can imagine other, definitive evidence that might prove the ALJ's conclusion that Sparks had a "record of being less than totally forthright with federal agencies,"[5] Tr. 28, such an inconsistency is a germane reason for discrediting Sparks' third-party testimony. Given the ALJ's citation to discrepant records of Davis' reported earnings, the Court will not disturb his conclusion concerning the weight given to Sparks'

---

[5] Davis's exact objection to the evidence supporting the ALJ's conclusion is not entirely clear. He objects that "[j]ust because *Mr. Sparks* did not make enough money to require him to file taxes doesn't mean that the W2 forms weren't provided timely or were doctored to hide monies paid under the table." Doc. 12 at 19 (emphasis added). It is possible that Davis meant to claim that just because *he* didn't make enough to require him to file taxes doesn't mean that Sparks failed to provide him with W2 forms.

Based on the Record documents cited in support of the ALJ's decision, however, he appears to have relied on aspects unaddressed by Davis' objection. Three documents in the administrative Record provided inconsistent earnings information for 2010: (1) $0.00 in 2010 earnings reported as of August 2011 (Tr. 287); (2) 2013 information from Sparks that showed $10,726.80 in 2010 earnings (*id.* at 302-306) and (3) $10,726.80 in earnings reported later in 2013 (*id.* at 311). The documents do not clearly indicate the source of the information they contain, but on their face they support the ALJ's conclusion that Davis' income for 2010 was unreported as of August 2011, and was only reported sometime before November 2013. Given the deferential standard this Court applies when reviewing the ALJ's credibility determinations, the inconsistency in Davis' reported 2010 income is sufficient to support the ALJ's conclusion that something was fishy. *See, e.g., Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) ("[C]redibility determinations are for the ALJ.").

opinion

## B. Davis' Overall Condition

Finally, Davis argues that the ALJ "failed to consider the impact of the combination of all [of his] impairments." Doc. 12 at 15. In particular, he objects to the ALJ's conclusion that his joint and muscle pain (myalgia) were "not medically determinable impairments." *Id.* (quoting Tr. 16); *see also* Tr. 16 (determining that the record "contains no significant findings on examination or other objective evidence . . . to support the allegations" of joint pain or myalgia). The Commissioner responds that even error at Step 2 was harmless because the ALJ continued the sequential evaluation and, regardless, the ALJ's RFC assessment adequately incorporated all limitations supported by the creditable medical evidence. *See* doc. 13 at 6-8.

To be "medically determinable," an impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. In support of his argument that his joint and muscle pains were medically determinable impairments, Davis relies on the opinions of Dr. Purvis and Dr. Murray. Doc. 12 at 15-16. However, plaintiff cannot rely on Dr. Purvis' opinion because he has

waived any argument that the ALJ improperly considered it. *See supra* at 9-10. Nor can he rely on Dr. Murray's opinion, because the ALJ properly rejected it. *See supra* at 7-8. Nor does Davis point to any other evidence in the record supporting the existence of such impairments. *See* Tr. at 16 (ALJ noting that the record "contains no significant findings . . . or other objective evidence (*e.g.* imaging studies) to support these allegations."). Since no credible medical evidence supports Davis' contention, the ALJ did not err by determining, at Step Two, that plaintiff's alleged myalgia and arthralgia were not medically determinable impairments. Tr. 16.[6]

---

[6] Even if the ALJ's failure to find that Davis' joint and muscle pain were medically determinable, or even severe, at Step Two was erroneous, the error was harmless. As the Eleventh Circuit and lower courts, have explained: "[S]ince the ALJ proceeded beyond step two, any error in failing to find that [a plaintiff] suffers from additional severe impairments . . . would be rendered harmless." *See, e.g., Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013); *Wood v. Berryhill*, 2017 WL 1196951 at *6 (M.D. Ala. Mar. 31, 2017) (quoting *Packer*).

At Step Two, the ALJ here found that Davis suffered from several medically determinable severe impairments, Tr. 15-16, and proceeded with the sequential process, Tr. 16-30. The ALJ then considered Davis' allegations concerning his pain in determining his RFC, *e.g.*, Tr. 19-20, which included exertional ("lift/carry 20 pounds occasionally . . . [and] 10 pounds frequently") and postural limitations ("limited to performing work activities that never requiring climbing ladders, ropes, or scaffolding[, and] . . . individually sit, stand, walk, push and/or pull for at least six of eight hours each eight hour workday"), Tr. 18, and thus adequately addressed his muscle and joint pain and weakness.

Here, the ALJ more than adequately accommodated those postural and strength limitations supported by the medical evidence. *Adams v. Comm'r, Soc. Sec. Admin.*,

## III. CONCLUSION

In sum, the Commissioner's decision is supported by substantial evidence, and it should be **AFFIRMED**.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*,

---

586 F. App'x 531, 534 (11th Cir. 2014) (an ALJ's decision also need not address every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole). Any error at Step 2 was therefore harmless to the ultimate RFC assessment and disability determination.

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this  13th  day of April, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA